UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

General Electric Capital Corporation and
GECPAC Investment II, Inc.,

      Plaintiffs,

v.                                                     Civil No. 09-1200 (JNE/AJB)
                                                        ORDER

JLT Aircraft Holding Company, LLC;
Aircraft No. 1074 Company, LLC; and
Gerald L. Trooien,

      Defendants.

---

Paul L. Ratelle, Esq., and Jeffrey W. Jones, Esq., Fabyanske Westra & Hart, P.A., and Alexander Terras, Esq., Timothy S. Harris, Esq., and Aaron B. Chapin, Esq., Reed Smith LLP, on brief for Plaintiffs General Electric Capital Corporation and GECPAC Investment II, Inc.

Defendants JLT Aircraft Holding Company, LLC; Aircraft No. 1074 Company, LLC; and Gerald L. Trooien did not appear.

---

This case is before the Court on the motion of General Electric Capital Corporation and GECPAC Investment II, Inc. (collectively, Plaintiffs), for summary judgment on their breach of contract claims against JLT Aircraft Holding Company, LLC; Aircraft No. 1074 Company, LLC; and Gerald L. Trooien (collectively, Defendants). For the reasons set forth below, the Court grants the motion.

## I.     BACKGROUND

General Electric Capital (GE Capital) and its affiliate GECPAC Investment II (GECPAC) provide financing for the purchase of aircraft. JLT Aircraft Holding Company (JLT) and Aircraft No. 1074 Company (No. 1074) are Minnesota limited liability companies. Trooien is the chief manager of JLT and No. 1074. GE Capital maintains GECPAC's accounts with respect to Defendants.

1

In December 2001, JLT and The CIT Group/Equipment Financing, Inc. (CIT), entered into a loan and security agreement whereby CIT loaned JLT $16,741,000 to purchase a Gulfstream aircraft and JLT executed a secured promissory note in favor of CIT for $16,741,000. Pursuant to that agreement, JLT granted CIT a first priority security interest in the Gulfstream.

CIT subsequently transferred its rights and interests under the Gulfstream loan to GECPAC. GECPAC is the successor in interest to CIT's rights under the Gulfstream loan, security agreement, and promissory note. In December 2005, GECPAC and JLT amended the Gulfstream promissory note and security agreement.

On November 9, 2006, JLT and GE Capital executed an aircraft security agreement that granted GE Capital a first priority security interest in the Gulfstream. GECPAC acknowledged and agreed to the November 2006 security agreement.[1] It states that GE Capital may accelerate JLT's obligations under the agreement if any of the enumerated "Events of Default" occur and that JLT "shall pay all actual costs incurred by [GE Capital] in collecting any of the Obligations owed [GE Capital] by [JLT] and enforcing any Obligations of [JLT] to [GE Capital], including but not limited to actual attorneys' fees and reasonable legal expenses." The enumerated Events of Default include failing to pay any installment or other amount due within ten days of its due date and permitting a lien to be placed on the Gulfstream. The November 2006 Gulfstream security agreement provides for a post-default interest rate of 18% per year.

GE Capital and No. 1074 executed an aircraft security agreement that granted GE Capital a first priority security interest in a Challenger aircraft on November 9, 2006. On the same day, No. 1074 and Plaintiffs executed an aircraft security agreement that granted Plaintiffs a first priority security interest in the Challenger and an addendum to the Challenger security

---

[1] GECPAC and JLT amended the Gulfstream loan agreement on the same day.

agreements. The November 2006 Challenger security agreements state that Plaintiffs may accelerate No. 1074's obligations under the security agreements if any of the enumerated "Events of Default" occur and that No. 1074 shall pay the actual costs incurred by Plaintiffs in collecting on and enforcing No. 1074's obligations to Plaintiffs, including attorney fees and reasonable legal expenses. The enumerated Events of Default include failing to pay any installment or other amount due within ten days of its due date and permitting a lien to be placed on the Challenger. The November 2006 Challenger security agreements provide for a post-default interest rate of 18% per year.

In addition, No. 1074 executed a promissory note on November 9, 2006, in favor of GE Capital for $4,693,346 in connection with the loan referenced in the November 2006 Challenger security agreements. The Challenger promissory note states that No. 1074 will pay a late fee equal to 5% of any installment or other amount due if the payment is not received within ten days of its due date and requires No. 1074 to pay a "Make Whole Amount" if GE Capital accelerates No. 1074's obligations under the Challenger promissory note.[2]

Also on November 9, 2006, Trooien executed guaranties of JLT's and No. 1074's present and future obligations to GE Capital and its subsidiaries, including "all losses, costs, attorneys' fees and expenses" incurred as a result of JLT's and No. 1074's defaults. The guaranties provide that GE Capital and its subsidiaries are not required to proceed against JLT and No. 1074 before pursuing payment from Trooien.

In April 2009, JLT and No. 1074 failed to make payments due and owing to Plaintiffs under the promissory notes. JLT and No. 1074 have not made any subsequent payments and

---

[2] The Make Whole Amount is the net present value of the remaining scheduled principal and interest payments discounted to the acceleration date by a specified interest rate minus the principal balance as of the acceleration date.

3

have permitted liens to be placed on the Gulfstream and Challenger (collectively, Aircraft). There is no dispute that JLT and No. 1074 are in default under the Gulfstream and Challenger agreements.[3] On May 15, 2009, GE Capital notified JLT and No. 1074 of their defaults and stated that it would accelerate the amounts due if the defaults were not cured by May 25, 2009. On May 20, 2009, GE Capital notified Trooien of the defaults and demanded that he immediately pay all amounts due and owing pursuant to the guaranties if the defaults were not cured by May 25, 2009. To date, the defaults have not been cured and payment has not been made.

On May 25, 2009, Plaintiffs brought this action alleging breach of contract. They sought money damages, injunctive relief, specific performance, and replevin of the Aircraft. In their Answer, Defendants denied only that one of the Aircraft was located in St. Paul and stated that they were "attempting to work with the Plaintiffs in a commercially reasonable manner to continue to make payments and retain the aircraft" and that it "would be inequitable to allow the Plaintiffs to replevin the aircraft." Plaintiffs moved for replevin on June 1, 2009, and the Court granted the motion on June 25, 2009. Plaintiffs now move for summary judgment on their breach of contract claims.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the

---

[3] The Court refers to the December 2001 Gulfstream security agreement and promissory note, the December 2005 amendments to the Gulfstream security agreement and promissory note, the November 2006 Gulfstream security agreement, and the Gulfstream guaranty collectively as the "Gulfstream agreement." Similarly, the Court refers to the November 2006 Challenger security agreements, addendum, and promissory note and the Challenger guaranty collectively as the "Challenger agreement."

initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the nonmovant must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The promissory notes, guaranties, and November 2006 security agreements state that their construction and the rights and obligations of the parties to them are governed by the laws of the State of New York. Under New York law, the elements of a claim for breach of contract are (1) the existence of a contract, (2) performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages resulting from the breach. *Coastal Aviation, Inc. v. Commander Aircraft Co.*, 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996). William Wilson, an employee of GE Capital, states in an affidavit that CIT and Plaintiffs have performed under the Gulfstream and Challenger agreements. Defendants do not dispute this statement, nor do they dispute that they are in default, that the Gulfstream and Challenger agreements are enforceable and valid, or that Plaintiffs are entitled to accelerate Defendants' obligations under the agreements. Accordingly, Defendants have not raised a genuine issue of material fact as to their liability under the Gulfstream and Challenger agreements.

As to damages, the November 2006 security agreements state that Plaintiffs "have all of the rights and remedies of a secured party under the Uniform Commercial Code" if an Event of Default occurs and that Plaintiffs' remedies are cumulative. Consequently, Plaintiffs are entitled

to a money judgment for the full amount due even though they are in possession of the Aircraft.[4] *See* N.Y. U.C.C. Law §§ 9-601(a)(1), 9-601(c), 9-609(a)(1) (2002); *see also* 68A Am. Jur. 2d *Secured Transactions* § 532 (2009) (explaining Uniform Commercial Code allows secured creditor to "repossess the collateral for the purpose of protecting it and concurrently proceed to enforce the debt" or to "sue on the debt and proceed to repossess and sell the collateral" (footnotes and citations omitted)). To prevent double recovery, however, Plaintiffs must dispose of the Aircraft in a commercially reasonable manner and apply the proceeds of the disposition to the amounts owed by Defendants. *See* N.Y. U.C.C. Law §§ 9-608, 9-610 (2002); *see also* 68A Am. Jur. 2d *Secured Transactions* § 534 ("The possibility, in such instance, of the creditor's double recovery on the debt . . . is prevented by the requirements that the creditor proceed in a commercially reasonable manner and account to the defendant for the proceeds of the sale of the collateral.").

As to the amount of damages, Wilson's affidavit states that Defendants owe the following amounts under the Gulfstream and Challenger agreements:

|  | **Gulfstream** | **Challenger** |
| --- | --- | --- |
| **Principal** | $12,551,427.55 | $4,206,677.74 |
| **Interest Due** | $179,903.79 | |
| **Default Interest** | $407,921.40 | $148,556.40 |
| **Make Whole Amount** | | $359,983.78 |
| **Late Charges** | | $8,609.00 |
| **Total** | $13,139,252.74 | $4,723,826.92 |

Wilson also states that the per diem interest after August 6, 2009, is $6,275.71 for the Gulfstream and $2,285.48 for the Challenger. Defendants do not dispute the amounts owed

---

[4] New York's most recent enactment of Article 9 of the Uniform Commercial Code, which applies to secured transactions, applies to a transaction or lien within its scope even if the transaction or lien was entered into or created before the enactment took effect. *See* N.Y. U.C.C. Law § 9-702(a) (2002).

6

under the Gulfstream and Challenger agreements. Therefore, there is no genuine issue of material fact that those amounts were owed on the Aircraft as of August 6, 2009, or that interest accrues at the stated per diem rate. Accordingly, GECPAC is entitled to summary judgment that JLT and Trooien are jointly and severally liable in the amount of $13,139,252.74 for their obligations under the Gulfstream agreement and for an additional $6,275.71 per day in post-default interest for each day after August 6, 2009, until the date of entry of judgment. GE Capital is entitled to summary judgment that No. 1074 and Trooien are jointly and severally liable in the amount of $4,723,826.92 for their obligations under the Challenger agreement and for an additional $2,285.48 per day in post-default interest for each day after August 6, 2009, until the date of entry of judgment.

Defendants seek post-judgment interest at an annual rate of 18%. Although the Gulfstream and Challenger agreements provide for an interest rate of 18% per year "both before and after any judgment," the applicable rate of post-judgment interest is set forth in 28 U.S.C. § 1961(a) (2006). *See Drovers Bank of Chicago v. Nat'l Bank and Trust Co. of Chariton*, 829 F.2d 20, 23 n.3 (8th Cir. 1987) (stating "interest awarded through judgment is based on the contract rate of interest, and interest awarded on the amount of the judgment is calculated at the federal rate"). Accordingly, Plaintiffs are entitled to post-judgment interest at the rate set forth in § 1961(a) on the sum of the amounts due under the Gulfstream and Challenger agreements as of August 6, 2009, and the per diem contract interest from August 6, 2009, to the date of judgment.

With respect to attorney fees and costs, Plaintiffs submit affidavits of counsel stating that GE Capital has incurred $46,023.10 in attorney fees and costs in prosecuting Plaintiffs' claims.[5] The affidavits state that the services rendered, hours expended, and costs and expenses were

---

[5] Wilson's affidavit states that GE Capital has agreed with its attorneys to pay all attorney fees and costs incurred by Plaintiffs in this matter.

7

necessary and reasonable for the prosecution of Plaintiffs' claims and that the rates are reasonable for the types of legal services performed, the sophistication of the representation, and the geographical locations where the services were performed. Defendants do not dispute their obligations under the Gulfstream and Challenger agreements for attorney fees and costs or the reasonableness of the stated amounts, and the Court's review of the schedules attached to the affidavits indicate that the amounts are reasonable. Consequently, GE Capital is entitled to summary judgment that Defendants are jointly and severally liable to it in the amount of $46,023.10 for Plaintiffs' reasonable attorney fees and costs incurred in enforcing their rights under the Gulfstream and Challenger agreements.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Summary Judgment [Docket No. 16] is GRANTED.

2. JLT and Trooien are jointly and severally liable to GECPAC in the amount of $13,139,252.74 for their obligations under the Gulfstream agreement; for an additional $6,275.71 per day in post-default interest for each day after August 6, 2009, until the date of entry of judgment; and for interest as set forth in 28 U.S.C. § 1961(a) after the entry of judgment until payment is made.

3. No. 1074 and Trooien are jointly and severally liable to GE Capital in the amount of $4,723,826.92 for their obligations under the Challenger agreement; for an additional $2,285.48 per day in post-default interest for each day after August 6, 2009, until the date of entry of judgment; and for interest as set forth in 28 U.S.C. § 1961(a) after the entry of judgment until payment is made.

4. Defendants are jointly and severally liable to GE Capital in the amount of $46,023.10 for Plaintiffs' reasonable attorney fees and costs incurred in enforcing their rights under the Gulfstream and Challenger agreements.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 18, 2009

s/ Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge